**TEXAS SOUTHERN UNIVERSITY,**
**Appellant,**

v.

**FEDERAL SIGN, Appellee.**

**No. B14–93–00464–CV.**

Court of Appeals of Texas,
Houston (14 Dist.).

Oct. 13, 1994.

Rehearing Overruled Nov. 17, 1994.

Patrick J. Feeney, Austin, for appellant.

Robert A. Plessala, Patricia S. Riddick, Houston, for appellee.

Before SEARS, LEE and BARRON, JJ.

OPINION

LEE, Justice.

Appellee, Federal Sign (Federal), brought suit against Texas Southern University (TSU) for claims arising out of a contract for the construction of basketball-arena scoreboards. TSU filed a plea to the jurisdiction, asserting that sovereign immunity barred Federal's suit. The trial court initially sustained TSU's plea and abated the case. However, on Federal's motion for rehearing, the trial court set aside the previous abatement and set the case for trial. The case was tried to a jury in October 1992. The jury returned a verdict against TSU. Appellant raises a single point of error contending the trial court erred in overruling its plea to the jurisdiction. By a single cross-point of error, Federal complains of the trial court's failure to disregard the jury's answer to the damage question. We reverse.

In 1988, the TSU Board of Regents began accepting proposals for the fabrication, delivery and installation of basketball arena scoreboards for use in TSU's Health and Physical Education Facility.[1] On November 16, 1988, Federal submitted a formal proposal to TSU offering to construct the arena scoreboards for $182,506.00. On December 9, 1988, Joshua Hill, vice-president of Facilities Planning and Operation for TSU, notified Federal that TSU intended to accept Federal's bid for the construction of the scoreboards contingent upon TSU's acceptance of a sponsor.[2] Following several months of negotiation between representatives of TSU, Pepsi, and Federal, the parties agreed on a contract price of $158,404.00. The Federal–Pepsi proposal was presented to the TSU Board of Regents on February 3, 1989. At that time, the Board accepted the terms of the proposal. On February 8, 1989, Mr. Hill sent written confirmation to both Federal and Pepsi indicating that TSU had accepted the Federal–Pepsi proposal. Several days later, TSU orally instructed Federal to immediately begin fabricating the scoreboards so they would be completed at the

---

1. The scoreboards were to be financed by a corporate sponsor, in exchange for advertisement and concession rights.

2. Pepsi–Cola Company expressed an interest in being sponsor.

earliest possible date. In reliance on TSU's written acceptance of its proposal and TSU's instruction to commence work, Federal began constructing the scoreboards.

On September 5, 1989, TSU sent a letter to Federal informing Federal that it found Federal's proposal unacceptable and would pursue other avenues to secure a scoreboard. TSU thereafter entered into a contract with another sign manufacturer for the construction of the arena scoreboard. On March 15, 1990, Federal filed suit alleging breach of contract and violation by TSU of the competitive bidding and open meetings laws.[3] Federal alleged it lost $67,481 in profits and incurred $22,840 in unrecoupable expenses. TSU answered the suit on April 16, 1990. Included in its answer, was an unverified plea to the jurisdiction asserting a claim of sovereign immunity. On June 25, 1990, a hearing was held at which time the trial court sustained TSU's plea and abated the case. However, by court order dated August 17, 1990, the trial court granted Federal's motion for rehearing and set aside the previous order of abatement. Following a jury trial, Federal was awarded $67,481.00 in damages.

█ In its sole point of error, appellant contends the trial court erred in overruling its plea to the jurisdiction because contract claims against the State are barred by the doctrine of sovereign immunity.

█ Under the doctrine of sovereign immunity, a suit against a state institution is a suit against the State. *See Courtney v. University of Tex. Sys.*, 806 S.W.2d 277, 281 (Tex.App.—Fort Worth 1991, writ denied). Texas Southern University is a state institution. TEX.EDUC.CODE ANN. § 61.003(3) (Vernon 1991); TEX.EDUC.CODE ANN. § 106.01 (Vernon 1991). Therefore, Federal's contract was with the State. *See Alcorn v. Vaksman*, 877 S.W.2d 390, 402 (Tex.App.— Houston [1st Dist.] 1994, n.w.h.).

█ Sovereign immunity consists of two basic principles of law. First, unless waived, the State has immunity from liability. *Mis-*

*souri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 425 (1936). *See* TEX.CIV.PRAC. & REM.CODE ANN. § 107.002(b) (Vernon Supp.1994) (legislative resolution granting permission to sue does not waive to any extent immunity from liability). The State waives its immunity from liability when it enters into a contract. *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 999 (1898). In *Fristoe*, the court stated that:

> So long as the State is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its owns courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.

45 S.W. at 999.

█ Second, even though the State waives its immunity from liability when it enters into a contract, it retains its immunity from suit. *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 842 (1958); *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied); *State v. Elliott*, 212 S.W. 695, 698–701 (Tex. Civ.App.—Galveston 1919, writ ref'd). The State, as sovereign, is immune from suit without consent even if there is no dispute regarding the State's liability. *Missouri Pac. R.R.*, 453 S.W.2d at 813. The doctrine bars a suit against the State unless the State has expressly given its consent to be sued. *Id.* at 814; *Green Int'l, Inc. v. State*, 877 S.W.2d 428 (Tex.App.—Austin 1994, n.w.h.). The State may consent to suit by enacting a statute that waives immunity or by passing a legislative resolution. Once it does so, it is liable under contract law the same as anyone else. *Alcorn*, 877 S.W.2d at 403. Here, we are concerned with the State's immunity from suit, not its immunity from liability.

---

**3.** See TEX.EDUC.CODE ANN. § 51.907 (Vernon 1992); TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon 1992).

**512**

Federal argues that the state legislature has waived immunity from suit in the instant case because of its enactment of Education Code, section 106.38. Section 106.38, which deals specifically with TSU, states that:

> Venue for a suit against the university is in Harris County or Travis County. Process may be served in the university only by service of citation on the president or one of the university's vice-presidents.

TEX.EDUC.CODE ANN. § 106.38 (Vernon 1991). Federal contends that this provision provides legislative consent to sue TSU for breach of contract. We do not agree.

For the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language. *Duhart v. State*, 610 S.W.2d 740 (Tex.1980). Nothing in section 106.38 indicates a clear intent to grant consent to suit. In those instances where consent has been granted by statute, the Legislature has been very precise in its use of words. Only twice has the Legislature done so. The first instance concerned the University of Houston. The Legislature provided that:

> The board has the power *to sue and be sued* in the name of the University of Houston. Venue shall be in either Harris County or Travis County. The university shall be impleaded by service of citation on the president or any of its vice-presidents. Nothing in this section shall be construed as granting legislative consent for suits against the board, the University System, or its component institutions and entities except as authorized by law. (emphasis added).

TEX.EDUC.CODE ANN. § 111.33 (Vernon 1991). This language has been held to grant consent to sue the University of Houston. *Fazekas v. University of Houston*, 565 S.W.2d 299,

302 (Tex.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

Again, in chapter 76 of the Education Code, the Legislature provided consent for suit against the University of Texas at Tyler. Section 76.04 provides that:

> The board *may sue and be sued* in the name of the institution. Venue is in Smith or Travis County. The institution may be impleaded by service of citation on its president, and legislative consent to suits against the institution is granted. (emphasis added).

TEX.EDUC.CODE ANN. § 76.04 (Vernon 1991).

Noticeably missing from section 106.38 is any language indicating any right of the board of regents of TSU to sue or be sued. Section 106.38 simply establishes venue for suits that might arise and the proper agents for service of process. We cannot say that the language clearly gives legislative consent to sue TSU. In other words, the State never consented to be sued. We have found no authority allowing recovery of money damages against the State without its consent in a "pure" contract case. *Courtney*, 806 S.W.2d at 281–82.[4] Without consent, Federal is unable to bring suit against TSU for breach of contact. The trial court erred in overruling TSU's plea to the jurisdiction. Appellant's sole point of error is sustained.

Because of our holding, we necessarily overrule Federal's cross-point contending the trial court erred in refusing to disregard jury answers on damages.

We reverse the judgment of the trial court and remand with instructions that the case be dismissed.

---

4. We are aware of the Dallas Court's holding in *Industrial Constr. Management v. DeSoto Indep. Sch. Dist.*, 785 S.W.2d 160 (Tex.App.—Dallas 1989, no writ), where the court stated that "the sovereign immunity doctrine does not apply to contracts made by the State, or any of its agencies under our Constitution, nor may legislative permission be required as a hurdle to a citizen's right to recover for his property, real or personal, taken by the State or its agencies." However, we disagree with the quoted language and decline to hold, as that court did, that the State automatically consents to suit every time it enters into a contract.

We note that the *DeSoto* court eventually conceded that a statute authorized suits against the DeSoto school board. Thus, its statement on sovereign immunity appears to be dicta.