Lloyd GILLESPIE, Appellant,

v.

Bert FIELDS, Jr., Michael H. Shelby, RBD–Shelby Agency, and Hopewell Operating, Inc., Appellee.

No. 12–96–00268–CV.

Court of Appeals of Texas, Tyler.

Sept. 30, 1997.

Rehearing Overruled Dec. 10, 1997.

Bill Pedersen, Nacogdoches, appellant.

Robert M. Greenberg, Paul Talmage Boston, Lee Daniel Vendig, Dallas, for Appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellant, Lloyd Gillespie ("Gillespie"), appeals the summary judgment for Appellees, Bert Fields, Jr., Michael H. Shelby, RBD–Shelby Agency, and Hopewell Operating, Inc. ("Fields"). Gillespie complains that the trial court erred in granting Fields' motion for summary judgment on any of the theories presented: causation, statute of limitations, or on payment, release, and accord and satisfaction. Gillespie also argues that the trial court erred in granting a final summary judgment when it did not address his causes of action for restoration of land and declaratory judgment. We will **affirm**.

Gillespie is the surface owner of a tract of land in Cherokee County. Fields are oil and gas interest owners and/or operators of the property. Gillespie contends that Fields, by building a bridge and digging or clearing a channel, diverted the normal course of a waterway identified as Keys Creek. The diverted waters converted 50 acres of timberland to wetlands, thereby killing the trees. Fields offered summary judgment evidence consisting of deposition excerpts and affidavits. By way of deposition, a nonparty operator[1] testified that he built a wooden bridge to traverse a place in the road which washed out whenever there was a heavy rain. He also cleaned out and deepened an apparently natural ditch which ran parallel to the road. Fields testified that the water which ran along the ditch passed back over the road at a low water crossing. They placed gravel and then cement there so that their heavy equipment could get across when the water was flowing. Several years later they built an iron bridge over that spot. Fields stated that they did nothing to the ditch, but only built a bridge over that place in the road where the creek was already diverted. The nonparty operator testified that both his company and Fields' used the wooden bridge and road in question, and that they were both responsible for maintaining them. He insisted, however, that his company acted alone in cleaning out and deepening the ditch. Gillespie's expert witness testified that the failure to divert the water from the ditch back to the creek on the other side of the iron bridge caused the creek to flow into

---

1. Gillespie did not sue an oil and gas interest owner/operator who operated on the land concurrently with Fields, although most of the evidence indicated that it was the non-party who first cleaned out the ditch, thereby diverting the creek.

the 50 acres, killing the trees. Gillespie's caretaker testified that he saw one of Fields' employees on a backhoe, and that for years before the litigation, he held the belief that the employee was digging the channel which ran parallel to the road. At the time of the deposition, however, he admitted that he had no memory that the employee was actually digging the channel. Fields testified that they used a backhoe when they installed the iron bridge. There was evidence that the wooden bridge was built in the seventies and the iron bridge was built in the mid-eighties.

Gillespie testified that he became aware of the creek diversion in 1986, but that he did not notice the trees were dying until the spring of 1993. He filed suit in 1994 for negligence in use of the surface estate, gross negligence, unreasonable use of land, and restoration of land. Fields filed a counter-claim, alleging that Gillespie breached a 1981 agreement by accepting sums in excess of the damages payable under that contract and by filing this lawsuit. They also claimed unjust enrichment/quantum meruit for improvements to Gillespie's property. Gillespie, after Fields filed an application for a temporary injunction that they had the right to remove the bridge, gravel and roads pursuant to the mineral lease, requested a declaratory judgment on that issue.

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. See TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990). We must, therefore, view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Evidence that favors the movant's position will be considered, however, if it is uncontroverted. *Id.*

When a defendant moves for summary judgment based upon an affirmative defense, it bears the burden to expressly present and conclusively prove all elements of the affirmative defense as a matter of law so that no genuine issue of material fact exists. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). When the trial court does not state the specific grounds on which the summary judgment was granted, the reviewing court must consider whether any theories set forth in the motion will support a summary judgment. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Summary judgment must be affirmed if any of the theories advanced are meritorious. *Id.* In the instant case, the trial court did not specify upon what basis it granted judgment for Fields. We must therefore determine if any one of the three bases presented by Fields supports the summary judgment.

It is uncontroverted that the diversion of Keys Creek caused the damage to Gillespie. The diversion occurred because the water of Keys Creek was deflected into the ditch on the far side of the road. Since no one diverted the water back into the creek, the water eventually ran onto Gillespie's 50 acres, and the standing water killed his trees. The nonparty operator testified that the creek first began flowing into the ditch in the 1970's when he built the wooden bridge. Fields testified that the water flowed back over the road for many years before he built the iron bridge. Gillespie testified that he first noticed the diversion in 1986.

■ In their second ground for summary judgment, Fields argued that it was undisputed that the ditch or channel was dug and Keys Creek was diverted by the nonparty operator in 1979. Since Gillespie filed suit in 1994, his claim was clearly barred by the statute of limitations. Gillespie responded that the discovery rule applied to his case. Since he did not know that his trees were dying until 1993, his cause of action was not barred by limitations. We disagree.

■ Actions for negligence and gross negligence are governed by the two-year statute of limitations. *American Centennial Ins. v. Canal Ins.*, 810 S.W.2d 246, 255 (Tex. App.—Houston [1st Dist.] 1991), *aff'd in*

*part, rev'd in part on other grounds,* 843 S.W.2d 480 (Tex.1992). The running of limitations may be tolled by the "discovery rule," which provides that the statute begins to run, "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff." *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977). Because the primary purpose of the statute of limitations is to require the plaintiff to bring an action while the defendant has a fair opportunity to find witnesses with the facts still fresh in their minds, and because the discovery rule undercuts this purpose, the discovery rule is generally narrowly construed. *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977). The Supreme Court has applied the discovery rule only in malpractice and a limited number of other cases when the plaintiff did not know and could not have known of the injury at the time it occurred. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). In his appellate brief, Gillespie cites *Ellert v. Lutz,* 930 S.W.2d 152 (Tex.App.—Dallas 1996, no writ) in his discussion of the discovery rule. *Ellert* stands for the proposition that the discovery rule applies to cases where a) the nature of the injury incurred is "inherently undiscoverable," and b) the evidence of the injury is objectively verifiable. *Id.* at 156. The term "inherently undiscoverable" is defined as a situation where an injury is "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Associates Int'l, Inc. v. Altai,* 918 S.W.2d 453, 456 (Tex.1996) (cite omitted).

■ On motion for summary judgment, the burden is on the defendant to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff discovered or should have discovered the nature of the injury. *Weaver,* 561 S.W.2d at 794. This is because "[t]he presumptions and burden of proof for an ordinary or conventional trial are immaterial to the burden that a movant for summary judgment must bear. *Missouri–Kansas–Texas R.R. Co. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex.1981). Thus, in a summary judgment setting, the burden rests upon the movant defendant not only to plead limitations, but also to negate the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988).

The question before us is whether the discovery rule applies to Gillespie's claims. Summary judgment evidence proves that Gillespie noticed the diversion of the creek in 1986 and the dead trees in the spring of 1993. Gillespie's expert witness testified that digging the channel from the wood bridge to the iron bridge without bringing the flow of the water back to the original Keys Creek channel caused the diversion of the creek onto the 50 acres. He also stated that before 1993, and due to the diversion, the trees on that 50 acres had suffered *year-round* inundation of water "for a period of time." He further opined that if the trees had stayed under water for only a year and the water was removed, they would have recovered. By the spring of 1993, however, the trees were not merely dying, but were clearly dead in the affected area. The lawsuit was not filed until 1994, more than eight years after Gillespie realized the creek had been diverted from its original course and, inferentially, at least two years after the trees began to die. Gillespie testified that he was on the land quite often during this period of time. We conclude that the basis of Gillespie's claims, the diversion of the creek which caused the death of his trees, is not inherently undiscoverable. We hold that his claims of negligence and gross negligence do not meet the first element of the *Ellert* and *Altai* test for application of the discovery rule. Consequently, Fields' limitations defense is established as a matter of law. Conversely, Gillespie failed to offer any summary judgment evidence sufficient to raise a fact issue as to the "inherently undiscoverable" nature of his injury. He offered no evidence that he used due diligence to discover the effect of the diverted creek, or that even if he had used due diligence, it was unlikely that he would have detected the dead and dying trees. The trial court prop-

erly granted summary judgment for Fields on the issue of limitations. Gillespie's point of error two is overruled; consequently, it is unnecessary for us to consider points one and three.

■ Gillespie's final point of error deals with his allegation that he had two pleaded causes of action, one for restoration of land and the other for declaratory relief, which were not addressed by the court. *Ergo*, a final summary judgment was inappropriate. Gillespie filed his request for declaratory judgment in response to Fields' counterclaims and request for an injunction. Gillespie did not ask for any affirmative relief. After the court granted Fields' motion for summary judgment, Fields dismissed their counterclaims. At any time before a party has introduced all of his evidence, he may dismiss a case or take a nonsuit. TEX.R. CIV. P. 162. A party's right to take a nonsuit is unqualified and absolute as long as the other party has not made a claim for affirmative relief. *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex.1982). The use of a creative pleading that merely restates defenses in the form of a declaratory judgment action cannot deprive a party of this right. *Newman Oil Co. v. Alkek*, 614 S.W.2d 653, 654–55 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.). To qualify as a claim for affirmative relief, a defensive pleading must allege that the party has a cause of action, independent of the opposing party's claim, on which he could recover benefits, compensation or relief. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990). Gillespie's request for declaratory judgment failed to do so. The trial court properly held that Gillespie's request for declaratory relief became moot when Fields dismissed their counterclaims.

■ Gillespie also complains that the summary judgment was not final because the trial court failed to address his cause of action for "restoration of land." Reasonable cost of repairs necessary to restore property to its prior condition is not a cause of action. Rather, it is an element of damages. *See Lone Star Dev. Corp. v. Reilly*, 656 S.W.2d 521, 525 (Tex.App.—Dallas 1983, writ ref. n.r.e.). Since the trial court held that summary judgment was proper on Gillespie's

claims of negligence and gross negligence, it was clear that Gillespie was not entitled to an award of damages. Point of error number four is overruled, and the judgment of the trial court is **affirmed**.