**Truett W. BATES, Appellant,**

v.

**TEXAS STATE TECHNICAL COLLEGE, et al., Appellees.**

**No. 10–97–305–CV.**

Court of Appeals of Texas, Waco.

Dec. 9, 1998.

Rehearing Overruled Feb. 17, 1999.

Thomas J. Blankenship, Waco, for appellant.

Jose M. Rangel, Asst. Atty. Gen., Austin, for appellee.

Before: Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

DAVIS, Chief J.

This is an appeal from the trial court's order granting two summary judgments in favor of the Appellees: Texas State Technical College,[1] Ralph Strother (interim Chan-

cellor at the time of the filing of the suit), sued in his official capacity, and others sued in their individual capacities.[2] Appellant Truett W. Bates presents two broad issues in which he claims that the trial court erred when it granted the defendants' first and second motions for summary judgment. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 1981, TSTC hired Bates as a full-time temporary instructor in the Drafting and Design Technology Department (DDT) at the Waco campus of TSTC. In June 1982, after Bates's probation period expired, TSTC offered Bates a one-year contract for the 1982–1983 school year which Bates accepted.

After Bates's first year at TSTC, he received a re-appointment letter for the 1983–1984 school year. Bates's re-appointment letter did not require his signature as a condition of acceptance. Re-appointment letters for the 1984–1985 through 1988–1989 school years were similar and also did not require his signature. Beginning with the 1989–1990 school year, TSTC required Bates to sign and return his re-appointment letter, indicating his acceptance of TSTC's terms of employment. This re-appointment letter was also worded substantially the same as his previous letters.

In August 1990, TSTC for the first time offered Bates a nine-month contract set to expire in May 1991. Bates signed and returned the contract. This contract was materially different from his previous contracts. It gave Bates the option of a nine-month work year rather than the standard twelve-month work year. The nine-month contract gave Bates the option of taking other jobs and offers during his three months of "off time." This contract stated explicitly that Bates's employment with TSTC was for the

---

1. Bates was first hired by Texas State Technical Institute (TSTI), which later changed its name to Texas State Technical College (TSTC) in 1991. For our purposes, the entities are one and the same. We will refer to the school as "TSTC" throughout our opinion.

2. They are: Cecil Groves (former Chancellor of the TSTC system), Carol Harper (Program Chairperson of the Drafting and Design Technology Program at TSTC), Jon Botsford (Bates's second-line supervisor), Don Goodwin (President of TSTC's Waco campus), and Murray Watson, Jr. (TSTC's General Counsel).

term stated in the contract only, with no expectation of future employment. Bates received similar offers for the 1991–1992, 1992–1993, and 1993–1994 school years. Each of these contracts stated that Bates's employment was only for the term in the contract and that he did not have any guarantee of future employment after the term expired.[3] Bates signed and returned each nine-month contract, accepting TSTC's conditions of employment.

Bates's last contract with TSTC expired on May 26, 1994. On May 24, 1994, two days before his contract ended, TSTC sent Bates a letter stating that it would not renew his contract for the 1994–1995 school year and that it would not be in the best interest of TSTC to continue his services beyond May 24, 1994.

Bates filed suit in September 1994 alleging that TSTC breached his contract and committed fraud. Bates also sought a declaratory judgment to determine if TSTC violated his due process, freedom of speech, right to counsel,[4] unlawfully denied him access to grievance procedures, and took his property without just compensation. Bates sued Strother for a mandatory injunction ordering Strother to reinstate him. Bates sued the individual defendants, Groves, Harper, Botsford, Goodwin, and Watson, for a declaratory judgment to determine if they violated his right to due process and took his property without just compensation. He also sued them for violating his freedom of speech and for tortiously interfering with his contract with TSTC. Bates also sued Harper and Botsford for punitive damages.

Bates sought attorney's fees under the Uniform Declaratory Judgments Act for his declaratory judgments against TSTC and the individual defendants. See TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Bates also sought attorney's fees against TSTC for his breach of contract and fraud claims.[5] See TEX.CIV.PRAC. & REM.CODE ANN: § 38.001(8) (Vernon 1997).

The defendants filed their first motion for summary judgment on April 30, 1997, alleging that: (1) Bates's claims against TSTC are barred by the doctrine of sovereign immunity; (2) Bates's claims against the individual defendants are barred by the doctrine of official immunity; (3) Texas does not recognize claims for money damages for violations of the Texas constitution; (4) Bates did not have a property interest in his future employment with TSTC, and thus he did not meet the threshold for either a due process violation or for a taking of his property without just compensation claim; (5) Bates's freedom of speech was not violated because his speech did not involve a matter of public concern; and (6) Bates's claim that his right to counsel was violated was lacking in merit and without basis. Bates filed a response to the defendants' motion on May 16, 1997.

The defendants then filed a motion supplementing and alleging additional grounds in support of their first motion for summary judgment on May 30, 1997. The defendants claimed that all of Bates's claims against TSTC and the individual defendants were barred by either the two-year or the four-year statute of limitations.

The defendants also filed a second motion for summary judgment on May 30, 1997, alleging that: (1) the trial court lacked jurisdiction to hear Bates's declaratory judgment claims against the individually-named defendants; (2) Bates's declaratory judgment

---

3. Contract for 1990–1991: "Continued employment is not guaranteed beyond the end of the contract period specified above."

Contract for 1991–1992: "This offer of appointment and your acceptance of it does not create a right to or an expectation of continued employment beyond May 29, 1992."

Contract for 1992–1993: "The offer of appointment is limited to the period specified and does not create a right to or expectation of continued employment beyond that period."

Contract for 1993–1994: "The offer of appointment is limited to the period specified and does not create a right to or expectation of continued employment beyond that period."

4. It appears that Bates eliminated this cause of action against TSTC because it is not mentioned in his Sixth Amended Original Petition, his latest petition on file with the court, nor is it an issue on appeal to this court.

5. Attorney's fees sought for a fraud cause of action are independently not recoverable by this statute. See TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997).

claims against the individual defendants and his breach of contract and fraud claims against TSTC were barred by either the two-year or the four-year statute of limitations; and (3) Bates's claim for a mandatory injunction against Strother was barred by either the two-year or the four-year statute of limitations. Bates filed a response to the defendants' second motion for summary judgment on June 12, 1997. On August 28, 1997, the trial court granted summary judgment on both of the defendants' motions.

Bates presented two broad issues which contend that the trial court erred when it granted both of the defendants' motions for summary judgment. Rather than address each motion for summary judgment, for simplicity's sake we will first address Bates's claims against TSTC and then his claims against the individual defendants.

## CLAIMS AGAINST TSTC

### I. Sovereign Immunity

■ Bates sues TSTC for breach of his employment contract, fraud,[6] and a declaratory judgment that TSTC violated his Texas constitutional right to due process, freedom of speech, right to file grievances,[7] and took his property without just compensation.[8] TSTC claims immunity under the doctrine of sovereign immunity. Bates argues that sovereign immunity does not bar his declaratory judgment claim because TSTC, through its officials, acted illegally when it failed to renew his contract, thus violating his Texas constitutional rights. In regards to Bates's breach of contract claim, Bates states that the Legislature waived TSTC's immunity from suit regarding this claim and that TSTC waived its immunity from liability when it contracted with him.

■ The illegal or unauthorized acts of a state official are not acts of the state. *Federal Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 404 (Tex.1997). Consequently, a suit against the state alleging that a state official acted without legal or statutory authority is not necessarily barred by sovereign immunity. *Id.* Bates claims that TSTC, through its officials, acted illegally when it violated his Texas constitutional rights. Thus, Bates's claims that stem from the allegedly illegal actions of TSTC officials are not barred by sovereign immunity.

■ However, Bates does not allege that TSTC officials, acting on behalf of TSTC, acted illegally when they allegedly breached his contract. Instead, Bates argues that sovereign immunity does not bar his breach of contract claim because the Legislature enacted a provision in the Education Code which

6. Without assuming that sovereign immunity does not bar Bates's fraud claim, we will address later whether the statute of limitations ran on this claim.

7. Bates claims that he was denied the right to file grievances in regard to TSTC's failure to renew his contract. *See* Tex. Const. art. I, § 27. Bates has not provided any argument or authority in support of his position nor does he cite to any reference in the record. The failure to cite to any legal authority or the record in support of an issue on appeal does not preserve that issue. Tex.R.App.P. 38.1(h); *Kimsey v. Kimsey*, 965 S.W.2d 690, 699 (Tex.App.—El Paso 1998, pet. denied); *Phippen v. Deere and Co.*, 965 S.W.2d 713, 716 (Tex.App.—Texarkana 1998, no pet. h.). We hold that Bates did not preserve error, if any, regarding his right to file grievances.

8. Bates claims, without authority, that TSTC's failure to renew his contract resulted in the taking of his property without just compensation. *See* Tex. Const. art. I, § 17 (which holds in part that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use

without adequate compensation being made, unless by the consent of such person; . . . ."). In our search, we could find no cases that hold that "property" applies to an individual's property interest in continued employment. Rather, our search indicated that "property" as stated in the Texas constitution refers to real property. *See City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997) (plaintiff sued claiming violation of takings clause when City's operation of its culvert system damaged her real property); *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673 (Tex.App.—San Antonio 1998, pet. denied) (owners of gasoline station sued city for an alleged taking of their property when commercial trucks blocked access to station while waiting inspection at border); *Trail Enter., Inc. v. City of Houston*, 957 S.W.2d 625 (Tex.App.—Houston [14th Dist.] 1997, review denied) (mineral lessee filed suit to challenge city ordinance that prohibited drilling within city's watershed because allegedly violated takings clause). Therefore, we hold that Bates does not have a property interest contemplated by the takings clause and affirm the trial court's order granting summary judgment on this claim.

waived TSTC's immunity from suit.[9] Therefore, we must examine whether sovereign immunity bars his breach of contract claim.

Sovereign immunity encompasses two types of governmental immunity: (1) immunity from liability and (2) immunity from suit. *Federal Sign*, 951 S.W.2d at 405. The state waives its immunity from liability when it contracts with a private party. *Id.* However, the state retains its immunity from suit unless the Legislature grants the individual consent to sue the state. *Id.; Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970).

In *Missouri Pacific Railroad Co.*, the Court held that the language "sue and be sued" located within an applicable statute gave general consent for the Brownsville Navigation District to be sued in the same manner as other defendants. *Missouri Pacific Railroad Co.*, 453 S.W.2d at 813. Other courts have found that similar language within applicable statutes provides legislative consent to sue. *Texas So. Univ. v. Fed. Sign*, 889 S.W.2d 509, 512 (Tex.App.—Houston [14th Dist.] 1994), *aff'd*, 951 S.W.2d 401 (Tex.1997) (TEX.EDUC.CODE ANN. § 76.04 (Vernon 1991), which states that the "board may sue and be sued," grants a plaintiff consent to sue the University of Texas at Tyler); *Fazekas v. Univ. of Houston*, 565 S.W.2d 299, 302 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (TEX.EDUC.CODE ANN. § 111.333 (Vernon 1971), which states that the "board has the power to sue and be sued," granted the plaintiff consent to sue the University of Houston). Section 135.55 provides, "The board may sue, and may be sued, in the name of the Texas State Technical College System, ..." Thus, the legislature has granted consent for TSTC to be sued. *Missouri Pac. R.R. Co.*, 453 S.W.2d at 813; *Texas So. Univ.*, 889 S.W.2d at 512; *Fazekas*, 565 S.W.2d at 302. Because TSTC waived its immunity from liability when it contracted with Bates and the Legislature waived TSTC's immunity from suit via statute, Bates's breach of contract claim against TSTC is not barred by sovereign immunity.

## II. Statute of Limitations

Bates claims that when TSTC did not renew his contract for the 1994–1995 school year, it violated his rights under his original 1982 contract with TSTC. Bates classifies his TSTC contracts into two categories: (1) his 1982–1990 contracts and (2) his 1990–1994 contracts. Bates claims that his contracts from 1982 through 1990 gave him a right to continued employment at TSTC. Bates claims that these contracts had substantially similar wording and that these contracts provided for his automatic renewal. Bates contends that he had a property right in his employment that derived from his 1982 contract. He claims that this property right arose from the representations made within his 1982–1990 contracts and TSTC's policy memoranda concerning an employee's expectancy of continued employment. Bates claims that his rights under his 1982 contract did not terminate when he signed his 1990 contract, that his right to continued employment carried over to all of his contracts with TSTC, and thus TSTC breached his rights under his 1982 contract when it did not offer him a renewal for the 1994–1995 school year.

Bates admits in his second affidavit that he read his contracts for the 1990–1991 through 1993–1994 school years and understood that they were different from his previous contracts with TSTC. Bates also admits that when he read the new contracts, he understood that he did not have a right to continued employment beyond the term of the contracts. Bates concedes that when he received his new contracts, he read and understood that it was TSTC's position that his employment was only for the term of the contract and no longer. Bates stipulates in his second affidavit that beginning with his contract for the 1991–1992 school year, he knew that his contracts did not give him a right to continued employment. Bates admits that he read the language in all of his new contracts that stated that he did not have a right to continued employment beyond the term of his contracts. Rather, Bates claims that "[his] right to expectation

9. TEX.EDUC.CODE ANN. § 135.55 (Vernon 1991) states: "The board may sue, and may be sued, in the name of the Texas State Technical College

System, with venue being either in McLennan County or Travis County."

of continued employment was created under [his] 1982 contract, not this contract."

TSTC contends that Bates's breach of contract, fraud, and due process claims are barred by either the two-year or the four-year statute of limitations. First, TSTC denies that Bates had any right to an expectancy of employment, either under his 1982 contract or any other contracts. However, TSTC claims that even if Bates had a right to continued employment under the 1982 contract, that right was terminated by TSTC when Bates signed his new contract in 1990 and TSTC issued its guidelines for faculty employment contracts.[10] TSTC claims that the statute of limitations commenced with respect to any right under the 1982 contract when Bates signed his new, nine-month contract for the 1990–1991 school year on August 31, 1990. Bates filed his original petition against TSTC on September 21, 1994, more than four years after the commencement of his claims.

■■■ A person must bring suit on claims for breach of contract, fraud, and a due process violation no later than four years after the day the claims accrue. TEX.CIV. PRAC. & REM.CODE ANN. §§ 16.004, 16.051 (Vernon 1997). A claim accrues when the wrongful act causes a legal injury, even if the injury is not yet discovered and if all the resulting damages have not yet occurred. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997).

■■■ However, the discovery rule is an exception to limitations, and if applicable, determines when the claim accrues for the purpose of computing limitations. *Pitman v. Lightfoot*, 937 S.W.2d 496, 510 (Tex.App.—San Antonio 1996, writ denied). The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). The defen-

dant moving for summary judgment on the affirmative defense of limitations has the burden to establish that limitations ran on the plaintiff's claim. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997). If the plaintiff pleads the discovery rule, the defendant has the burden to negate its application and prove that there is no genuine issue of material fact concerning the time the plaintiff discovered, or using reasonable diligence should have discovered, the nature of his injury. *Id.; Gillespie v. Fields*, 958 S.W.2d 228, 231 (Tex.App.—Tyler 1997, pet. denied).

■■■ Our first inquiry is to determine whether the discovery rule applies to Bates's breach of contract, fraud, and due process violation claims. The discovery rule applies when: (1) the nature of the injury is inherently undiscoverable and (2) the evidence of the injury is objectively verifiable. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). An "inherently undiscoverable" injury is one that by its nature, is unlikely to be discovered within the prescribed limitations period, despite the plaintiff's due diligence. *S.V. v. R.V.*, 933 S.W.2d at 7; *Murphy v. Campbell*, 964 S.W.2d at 270. The discovery rule is a very limited exception to limitations and the courts construe its application strictly. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d at 456. The courts generally apply the discovery rule exception when it is difficult for the plaintiff to learn of the negligent act or omission that gave rise to legal injury. *Id.*

### A. Breach of Contract

■■■ Bates claims that TSTC's breach of his 1982 contract was inherently undiscoverable and thus limitations began to accrue on May 24, 1994, the day TSTC refused to renew his contract. Bates claims that he did not know, nor would he know using due diligence that his right to continued employment terminated when he signed his 1990–

---

10. "Management Guideline for Faculty Employment Contracts," hereafter referred to as MG–140, which was issued on July 16, 1990, replaced TSTC's previous memoranda concerning an employee's expectancy to continued employment. MG–140 stated that it was the policy of TSTC to "employ all faculty and professional staff under

written contracts ..." It also stated, "The contracts under which faculty and professional staff are employed provide employment rights during the term of the contract, but do not provide employment rights beyond the end of the contract period."

1991 contract. Bates further claims that there was no wording in his 1990–1991 contract that gave him notice that he did not have a right to continued employment. He also claims that he did not knowingly waive any right to continued employment when he signed his 1990–1991 contract.

TSTC claims that any belief Bates held regarding his right to continued employment under his 1982 contract ended when he signed his 1990–1991 contract. TSTC contends that the terms of this contract contained language that explicitly stated that Bates did not have any right to continued employment at TSTC beyond the term of the contract.[11] TSTC argues that at this time, the language on the face of the contract would have alerted Bates that his employment at TSTC was guided by his current contract rather than his previous 1982 contract. TSTC professes that Bates never contested, either verbally or in writing, its alleged new position on his right to continued employment. Thus Bates waived any right he might have had under the 1982 contract.

TSTC also claims that Bates's belief in his right to continued employment was effectively extinguished when TSTC issued MG–140, its "Management Guideline for Faculty Employment Contracts" on July 16, 1990. TSTC argues that the issuance of MG–140 was enough to alert a reasonable person that an employee did not have a right to continued employment beyond the term of his contract. We agree with TSTC. We believe a reasonable person would know that their previous contracts were no longer applicable and that their employment was governed solely by TSTC's new contracts and issued guidelines. We hold that limitations began to run on Bates's breach of contract claim on August 25, 1990, the day Bates signed his new nine-month contract. Therefore the trial

11. Bates's 1990–1991 contract states, "Continued employment is not guaranteed beyond the end of the contract period specified above ."

12. A person must have a property interest in their right to continued employment in order to be entitled to procedural due process. *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *see also Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (holding that although Texas

court did not err when it granted TSTC summary judgment on the basis that limitations precluded Bates's contract claim.

**B. Fraud**

Even if we assume that TSTC waived its immunity to liability and that section 135.55 of the Texas Education Code waives TSTC's immunity from suit for a fraud claim stemming from Bates's employment contract, the statute of limitations has run and this claim is barred.

The statute of limitations for fraud is four years. TEX.CIV.PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997); *Savage v. Psychiatric Inst. of Bedford, Inc.,* 965 S.W.2d 745, 750 (Tex.App.—Fort Worth 1998, pet. denied). Bates's fraud claim accrued on the same date as his breach of contract claim. For the reasons above, we affirm the trial court's grant of summary judgment on the basis that limitations ran on his fraud claim.

**C. Due Process**

Bates claims that he had a property interest in his right to continued employment and that TSTC's failure to give him notice and a hearing before it did not renew his contract violated his right to due process. *See* TEX. CONST. art. I, § 19. Courts use a two-part analysis when analyzing a due process claim: (1) whether there is a liberty or property interest that is entitled to due process protection and (2) if so, what process is due. *University of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995); *State Bar of Tex. v. Leighton,* 956 S.W.2d 667, 671 (Tex.App.—San Antonio 1997), *writ denied per curiam,* 964 S.W.2d 944 (Tex. 1998). However, even if we assume that Bates had a property interest in his right to continued employment and was entitled to a due process hearing,[12] the statute of limita-

Constitution refers to "due course" rather than Constitution's "due process," no meaningful distinction and federal interpretations of procedural due process are persuasive authority when interpreting Texas' "due course" guarantee). Our opinion does not determine whether Bates had a property interest in his right to continued employment at TSTC. We merely hold that even if we assumed that Bates did have a property interest and was entitled to a procedural due process hearing before TSTC did not renew his contract,

tions ran and Bates's due process claim is barred.

Bates admits in his affidavits that beginning in 1990, he knew that his employment was for the term of his contract and that he had no expectation of continued employment beyond the term of his contract.[13] By Bates's admission, when he signed his first nine-month contract on August 25, 1990, and received TSTC's Board-approved MG–140, he should have known that he no longer had any right to continued employment at TSTC. A reasonable person using due diligence would know that any right he had to continued employment terminated when he signed a contract that explicitly stated that employment was only for the length of the contract. We hold that Bates's claim that TSTC violated his right to due process accrued when he signed his contract in August 1990. Since Bates brought suit after limitations ran on this claim, his claim is barred.

### III. Freedom of Speech

■ Bates claims that he was wrongfully terminated in violation of his right to free speech when, in December 1993, he hired an attorney to assist him with his complaints about his TSTC contract. *See* TEX. CONST. art. I, § 8.

■ In order for a public employee to demonstrate a violation of his freedom of speech, he must first demonstrate that he was speaking as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Brown v. Univ. of Tex. Health Ctr. at Tyler,* 957 S.W.2d 911, 918 (Tex.App.—Tyler 1997, no pet.). When a public employee speaks as an employee upon matters of personal interest, this is not a matter of public concern. *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690 (when a public employee speaks as an

employee upon matters of personal interest, a court is not the appropriate forum to review the personnel decision taken in reaction to the employee's behavior); *see also Upton County, Tex. v. Brown,* 960 S.W.2d 808, 825 (Tex.App.—El Paso 1997, no pet.) (if employee expression does not relate to any political, social, or other concern to the community, officials should have wide latitude in managing their offices without the judiciary's intrusive oversight in the name of the First Amendment). Bates's "speech" was clearly personal speech questioning the aspects of his personal employment. Bates was not speaking as a citizen about a matter of public concern, rather as an employee about a personal matter. We hold that Bates's freedom of speech was not violated.

### IV. Reinstatement

■ Bates sued Ralph Strother, then interim Chancellor of TSTC, in his official capacity for reinstatement to his past position at TSTC. Bates claims that reinstatement is a viable cause of action and that limitations has not expired on his claim. However, he does not cite any legal authority or the record in support of this argument. As mentioned previously, the failure to cite to any legal authority or the record does not preserve an issue for appellate review and thus, this claim is not preserved for our review. TEX.R.APP.P. 38.1(h); *Kimsey,* 965 S.W.2d at 699; *Phippen,* 965 S.W.2d at 716.

### V. Attorney's Fees

Bates sued TSTC for attorney's fees for his declaratory judgment and his breach of contract and fraud claims. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.009, 38.001(8) (Vernon 1997). We hold that Bates cannot recover attorney's fees under these theories.

---

Bates's due process claim is barred because the statute of limitations ran on his claim.

**13.** Bates testifies in his affidavit that when he received his contract for the 1990–1991 school year, he knew that he no longer had a right to continued employment under his current contract, but believed his right originated from his 1982 contract. He states, "I knew that I still had my right to expect annual renewals under my 1982 contract...."

Bates also stated that when TSTC renewed his contract for the 1991–1992 school year that, "Yes, I read the language in that letter which states that '[T]his offer of appointment and your acceptance of it does not create a right to expectation of continued employment beyond May 29, 1992.' My right of expectation of continued employment was created under my 1982 contract, not this contract."

First, the trial court's decision whether to award attorney's fees in a declaratory judgment action lies within the discretion of the trial court. *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 583 (Tex.App.—San Antonio 1998, no pet. h.); *Knighton v. Int'l Bus. Mach. Corp.*, 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Bates did not present any evidence that the trial court's denial of attorney's fees under the Uniform Declaratory Judgments Act was an abuse of discretion.

Second, a party is entitled to attorney's fees under section 38.001 if they: (1) prevail on a claim for which attorney's fees are recoverable and (2) recover damages. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997). A breach of contract claim is a claim in which attorney's fees are statutorily recoverable. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). Attorney's fees for a fraud claim may be recoverable in connection with another cause of action on which attorney's fees are recoverable when the claims are so interrelated that the prosecution or defense of the claims requires proof of the same facts. *Panizo v. Young Men's Christian Ass'n of the Greater Houston Area*, 938 S.W.2d 163, 170 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Bates did not prevail on his breach of contract or fraud claims and is therefore not entitled to attorney's fees for these causes of action.

We affirm the trial court's order denying Bates attorney's fees.

## CLAIMS AGAINST THE DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITIES

### I. Official Immunity

The individual defendants ("defendants") moved for summary judgment on the basis that they are entitled to official immunity from suit. Both parties stipulate that the defendants were performing discretionary duties and acting within the course and scope of their employment. Bates contests whether the defendants' summary judgment evidence conclusively establishes that they acted in good faith and are entitled to official immunity.

Government employees are entitled to the affirmative defense of official immunity from suit if they can demonstrate that they: (1) acted in good faith; (2) acted within the course and scope of their employment; and (3) while they performed their discretionary duties. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex.1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

The test for good faith of a government official is whether under the same or similar circumstances, a reasonable government employee could have believed that his actions were lawful based upon the information he possessed at the time of his conduct. *Chambers*, 883 S.W.2d at 656; *Murillo v. Vasquez*, 949 S.W.2d 13, 16 (Tex.App.—San Antonio 1997, writ denied). The test focuses on the objective legal reasonableness of the official's actions, not whether the official acted with subjective good faith. *Putthoff v. Ancrum*, 934 S.W.2d 164, 172 (Tex. App.—Fort Worth 1996, writ denied); *Emerson v. Borland*, 927 S.W.2d 709, 721 (Tex. App.—Austin 1996, writ denied), *cert. denied*, —— U.S. ——, 118 S.Ct. 174, 139 L.Ed.2d 116 (1997). In order to controvert summary judgment proof on the element of good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified [the] defendant's acts." *Chambers*, 883 S.W.2d at 657 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993)).

In this case, the individual defendants' affidavits establish that they acted in good faith; that they acted as other reasonably prudent officials, under the same or similar circumstances, who could have believed that their actions were justified, would have acted.

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.

1985); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). When determining whether a material fact issue exists, we must accept as true all evidence that is favorable to the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Delta Air Lines, Inc.,* 949 S.W.2d at 425. We must also resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 549; *Delta Air Lines, Inc.,* 949 S.W.2d at 425.

Summary judgment may be granted based upon the uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily controvertible. TEX.R.CIV.P. 166a(c); *Gallegos v. Escalon,* 918 S.W.2d 62, 64 (Tex. App.—Corpus Christi 1996, no writ). A readily controvertible affidavit is one that can be effectively countered by opposing evidence. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989); *Stucki v. Noble,* 963 S.W.2d 776, 780 (Tex.App.—San Antonio 1998, pet. denied).

Cecil Groves's affidavit stated that when he was Chancellor of TSTC he was not normally involved in the day-to-day personnel matters at TSTC. Instead, he referred these matters to the personnel staff at TSTC. Groves stated that he considered Bates's contract non-renewal an issue for the administration of the Waco campus of TSTC and not an issue for the Chancellor of TSTC. At all times, Groves stated that he acted within the normal course and scope of his duties when he handled the Bates matter by referring it to the personnel staff at TSTC. By handling this matter in the same manner and with the same deference that he handled all personnel matters, Groves acted in good faith.

Carol Harper testified by affidavit that as the Program Chairperson of the Drafting and Design Technology Program at TSTC, it was her job to supervise the faculty and staff in her department (which included Bates), manage and budget her department's finances, and implement needed curriculum changes. As the Program Chairperson, Harper received numerous complaints from Bates's students regarding his competency as an instructor. In her affidavit, Harper details some of the many unsolicited complaints she received from students about Bates. Harper states that one student complained to her that Bates routinely gave short lectures that did not adequately explain the day's assignment. One day, this student arrived at 8:02 a.m., late for Bates's 8:00 a.m. class. The student complained that Bates's lecture was so short that by arriving two minutes late, he had already missed the day's lecture. Harper details another student's complaint that Bates's class would usually be dismissed an hour early so that Bates would be able "to make it home for supper before dark as he explained it to us." Harper describes yet another student's complaint that as a student in Bates's drafting class, he did not learn much about drafting but did learn that Bates "enjoy[ed] beer at 'George's,' hunting, country living, and most of all, applying his TSTC paycheck toward his rental property in Gatesville."

Harper averred that although TSTC did not require cause when determining whether to renew an instructor's contract, she took into account the many complaints she received from Bates's students, his poor job performance evaluations, faculty feedback, and her personal observations before she chose to recommend that TSTC not renew Bates's contract. Harper attached copies of the students' written complaints and her records of the students' complaints. She stated that the ultimate decision whether to renew Bates's contract rested with Don Goodwin, the President of TSTC. Harper also stated that TSTC does not offer tenure to any of its faculty and that it has never guaranteed any of its faculty a right to continued employment. Harper testified that by referring this matter to Don Goodwin, the President of TSTC, she carried out the responsibilities of her position and acted accordingly. Harper stated that she did not bear any animosity towards Bates, and that she acted in the best interest of TSTC when she recommended that Goodwin not renew Bates's contract.

Jon Botsford, Bates's second-line supervisor at TSTC and Harper's immediate supervisor, stated in his affidavit that at all times he believed that faculty employment contracts at TSTC were for the term of the

contract and that Bates did not have a property interest in his job at TSTC. Botsford testified in his affidavit that cause was not required before an instructor's contract was not renewed, but that it was his understanding that Harper took several items into consideration before she recommended that TSTC not renew Bates's contract. Botsford also stated that Harper's evaluation of Bates provided a sufficient basis for Bates's termination. Botsford testified that he acted within the course of his employment by referring Harper's recommendation to Goodwin. Botsford also stated that the final decision whether to renew Bates's contract rested with the President of TSTC, Don Goodwin.

Don Goodwin, President of TSTC, swore that at all times he believed that an instructor's employment was for the length of his written contract and that TSTC did not need cause when it did not renew its faculty contracts. Goodwin stated that he understood Harper's recommendation was based on many factors and in addition, student enrollment in Bates's department was low and that TSTC did not have a need to fill Bates's position for the 1994–1995 school year. Goodwin testified that the position that Bates held at TSTC has remained vacant since his departure because TSTC does not have either a need or the finances to fill it. Goodwin attached a copy of Bates's termination notice. This notice contained performance evaluations stating that Bates performed unsatisfactorily and below average in every category.

Goodwin averred that TSTC's letter to Bates stating that Bates's services expired on May 24, 1994, was a typographical error. Rather, Goodwin stated that the letter should have read that Bates's services expired on May 26, 1994, the date contained in Bates's employment contract. Goodwin also stated that TSTC paid Bates his full salary according to the terms of his contract. Goodwin stated that he made the decision not to offer Bates a new contract based in part upon Harper's recommendation, Botsford's recommendation, and the numerous unsolicited student complaints lodged against Bates.

Murray Watson, General Counsel of TSTC, swore in his affidavit that he did not participate in the decision not to offer Bates a new contract. In fact, Watson states that his actions in regards to Bates's dispute with TSTC was limited to writing Bates a few letters on behalf of TSTC and advising TSTC officials in this matter. Watson states that he did not personally meet Bates until a 1995 court appearance. Watson states that he acted within the normal scope of his duties as general counsel to TSTC and as such, acted in good faith regarding Bates's dispute with TSTC.

Each individual defendant's affidavit stated why he or she acted, what he or she believed to be true when they acted, included readily controvertible facts, stated that at all times he or she acted in good faith, and why they acted in good faith. Each defendant's affidavit detailed specific reasons why they did not believe Bates had a property right, why they thought his employment with TSTC was for the term of the contract only, and why they did not offer Bates a new contract. We find that the individual defendants' affidavits are not mere legal conclusions and contain readily controvertible evidence.

Bates complains that the individual defendants' affidavits are not readily controvertible and that the defendants did not prove they acted in good faith. The only evidence Bates includes in his response is an affidavit of Jack Tompkins, the former President of TSTC. Tompkins' affidavit simply states that he has been presented with all the relevant facts in this matter and it is his opinion that no one in the individual defendants' position would have acted they way they did in this matter. As the non-movant, Bates did not prove that the individual defendants' summary judgment evidence was not readily controvertible and contained mere legal conclusions. Bates also did not prove that "no reasonable person in the defendant's position could have thought the facts were such that they justified [the] defendant's acts." *Chambers*, 883 S.W.2d at 657 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993)). We find that Bates failed to controvert the individual defendants' summary judgment evidence that they acted in good faith. Thus, the individual defendants are entitled to summary judgment as a matter of

law on their affirmative defense of official immunity.

We overrule both of Bates's issues and affirm both of the trial court's orders granting summary judgment.