**LONE STAR DEVELOPMENT CORPORATION, and CLS Associates, Limited, Appellants,**

v.

**Harriet A. REILLY and Richard Finlan, Appellees.**

**No. 05–82–00186–CV.**

Court of Appeals of Texas, Dallas.

May 20, 1983.

Rehearing Denied Aug. 25, 1983.

H. Louis Nichols, Dallas, for appellants.

Mike McKool, Dallas, for appellees.

Before STOREY, SPARLING and AL-LEN, JJ.

ALLEN, Justice.

Harriet A. Reilly and Richard E. Finlan sued Lone Star Development Corporation (Lone Star) and CLS Associates, Ltd. (CLS) for title to and possession of real property in Dallas County, Texas. They alleged that Lone Star had constructed a building which encroached on Reilly's property. The suit was to establish the true boundary lines between the parties' respective properties and to recover damages sustained by Finlan as a result of being deprived of the use of the portion of Reilly's property that was encroached upon by Lone Star's building. The case was tried before a jury. Three special issues were submitted to the jury. The issues and answers are as follows:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the true and correct location of the boundary lines of the land owned by Harriet A. Reilly are as shown on Plaintiff's Exhibit 20, the survey made by O.R. (Chick) McElya?

Answer: "We do" or "We do not."

ANSWER: We Do.

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the building of Lone Star Development Corp. in question encroaches on the land owned by Harriet A. Reilly in question?

Answer: "We do" or "We do not."

ANSWER: We Do.

If you answer Special Issue No. 2 "We do", answer Special Issue No 3; otherwise do not.

SPECIAL ISSUE NO. 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Richard E. Finlan for the diminution in value, if any, of his leasehold interest proximately resulting from the encroachment of defendant, if any en-

croachment you find, from September 1, 1977, to the present.

Answer in dollars and cents, if any. ANSWER: $22500.00

As used in this Special Issue—"leasehold interest" means the exclusive right to use, occupy and enjoy the possession of land described in the lease.

Appellants Lone Star and CLS's motions to disregard the jury's answer to certain issues and for judgment non obstante veredicto were denied. Judgment was entered on the jury verdict. Lone Star and CLS assert thirteen points of error. We affirm in part and reverse in part.

Reilly and Finlan claimed that in the summer of 1977 Lone Star commenced construction of a building on Lot 6 that encroached onto the north five feet of Lot 6 of their property. Although the pleadings seek title to property, it is apparent that the parties recognize that each is the record owner of the property described in each of their respective deeds. Reilly is the owner of all of Lot 5 and the north five feet of Lot 6, in Block 9/5198, of the Lakeview addition. Lone Star is the owner of all of Lot 6 except the north five feet in Block 9/5198 of the Lakeview addition. The dispute concerns the boundary line location between the properties. The evidence identifies Finlan as lessee of the property owned by Reilly. After completion of the building in question, Lone Star conveyed its property to DJM Enterprises, Inc., which in turn conveyed the property to the present owner—CLS Associates, Ltd.

Reilly and Finlan sought to establish the boundary lines of their property by relying on a survey made by O.R. (Chick) McElya. The survey plat was admitted into evidence as plaintiff's Exhibit 20. McElya testified that he had relied on a variety of points, including control points in the middle of Greenville Avenue and lot lines of property located on the north and the south of the property belonging to Reilly and Finlan in making the survey. None of these control points appear on plaintiff's Exhibit 20. The plat does show an area occupied by a masonry building. McElya testified that the building encroached onto Reilly and Finlan's property 5.34 feet at the northeast corner of the building and 6.14 feet at the northwest corner of the building. These points of encroachment together with their distances are also shown on the plat, plaintiff's Exhibit 20. McElya also testified that a curb line placed on property west of the building encroached onto Reilly and Finlan's property 7.64 feet. Testimony from T.E. Norton, Arthur Beck, Roy Briscoe, and Paul Harden was offered to corroborate the accuracy of the survey made by McElya. No field notes were offered into evidence. The plat, therefore, was a permissible conclusion reached by McElya based upon the survey made by him. It showed the encroachment in relation to the survey line previously located on the ground.

John Carver, a licensed surveyor, testified in support of Lone Star and CLS's contentions. His survey plat showed that Lone Star and CLS's building and improvements were within the boundaries of their property as described in their deed. Mr. Carver stated that none of the improvements made by Lone Star and CLS encroached onto the north five feet of Lot 6, in Block 9/5198 of the Lakeview Addition. The jury found contrary to Carver's testimony.

Finlan offered the testimony of A.C. Moser, a realtor, to support his claim for damages due to the encroachment of Lone Star and CLS's building on his property. Moser testified that in his opinion the highest and best use of the property in question would be to use the property as a greenery and add a retail strip on the front of the property. Finlan claimed that Lone Star and CLS's encroachment deprived him of needed parking spaces necessary to comply with City requirements for the retail strip. No retail strip was built on the subject property. Moser also testified that he felt Finlan's loss on being deprived of the highest and best use of his property was $500.00 to $550.00 a month. Lone Star and CLS offered testimony relating to the method for determining reasonable rental value of an encroachment on leased premises.

In their first six points of error, Lone Star and CLS complain that the court erred in awarding judgment for title and possession of property described in Exhibit "A" attached to the judgment for the following reasons:

1) the judgment was not supported by the pleadings, evidence, or jury verdict;

2) the description of the property was insufficient to locate it on the ground;

3) the judgment did not describe the property with certainty nor tie the property to any object which could be used to locate the property on the ground so that the judgment could be enforced;

4) no pleadings or evidence described the area encroached upon;

5) Lone Star and CLS's objection to Special Issue No. 1 should have been sustained because the issue was not an ultimate issue and the answer to the issue was not sufficient to support a judgment; and

6) Lone Star and CLS's motion to disregard the jury's answer to Special Issue No. 1 should have been granted because the issue did not define the boundaries of the Reilly tract sufficiently to support a judgment which would locate the boundary line on the ground in such a manner that an officer could locate the boundary lines of the land affected without having to exercise judicial discretion.

Lone Star and CLS discussed these points of error together in their brief. Since these points of error are related, we will also consider them together.

■ The jury by special issue number one found that the true and correct location of the boundary lines of the land owned by Reilly were as shown on plaintiffs' Exhibit 20, the survey made by O.R. (Chick) McElya. The jury also found by its answer to special issue number two that Lone Star's building encroached on the land of Reilly. Both findings are adequately supported by the evidence. The court entered judgment based on the jury findings that: 1) the true

location of the boundary line between the parties' property was shown on the survey of McElya that was introduced as plaintiffs' Exhibit 20 and attached to the judgment; 2) Lone Star and CLS had encroached on the land owned by Reilly as shown on a photocopy of a portion of plaintiffs' Exhibit 20; and 3) the two story masonry building constructed on Lot 6 by Lone Star as described and set out in Exhibit "A," encroached on the land owned by Reilly a distance of 5.34 feet at the northeast corner of the building and a distance of 6.14 feet at the northwest corner of the building.

It is clear that the main dispute and principal issue in the case is the determination of the true location of the boundary line between the parties' property. Lone Star and CLS contend that neither the pleadings, evidence, jury verdict, nor the judgment describe the boundary line in question sufficiently to support the judgment. The general rule in cases dealing with disputed boundary lines is that the judgment:

should definitely fix and establish the location of the line in dispute, and ordinarily should do so with reference to some known object concerning the identity and locality of which there is no controversy. The test of sufficiency is as to whether the judgment so identifies the land that an officer charged with the duty of executing a writ of possession could go upon the ground and without exercising judicial functions ascertain the locality of the line; that is, whether the officer could with the assistance of a competent surveyor find the line by the matter set out in the judgment. If the judgment does not accomplish that result it is of no avail and will be set aside upon appeal.

*Hernandez v. Robledo,* 236 S.W.2d 242, 243–44 (Tex.Civ.App.—Dallas 1951, no writ); see also *Wilhelm v. Baumann,* 63 Tex.Civ. App. 146, 133 S.W. 292, 293 (1910, no writ).

■ We conclude that the judgment in the instant case meets the standards required by the rule stated in *Hernandez.*

The physical location of the building in question is fixed and undisputed. The judgment includes the applicable portion of the McElya survey which shows the distances of the encroachments and the correct boundaries of the Reilly property. With the assistance of a competent surveyor, a sheriff or officer could go upon the ground and ascertain the location of the correct boundary line between the parties' properties by the matters set out in the judgment. We overrule Lone Star and CLS's first six points of error.

Lone Star and CLS claim in their seventh and eighth points of error that the trial court erred in overruling their objections to the submission of special issue number two and in denying their motion to disregard the jury's answer to special issue number two. Lone Star and CLS's objection to the submission of special issue number two was that the issue was not one upon which a judgment could be based. An examination of the pleadings and evidence clearly shows that the question of whether an encroachment existed was one of the primary issues to be determined in this lawsuit. A controlling issue is one essential to the right of action or matter of defense *Dreeben v. Sidor,* 254 S.W.2d 908, 910 (Tex. Civ.App.—Amarillo 1952, writ ref'd n.r.e.). TEX.R.CIV.P. 279 requires the trial court to submit the controlling issues raised by the written pleadings and the evidence. We hold that special issue number two was a controlling issue that had to be answered in order to arrive at a judgment dispositive of the dispute between the parties. *See Sell v. C.B. Smith Volkswagen, Inc.,* 611 S.W.2d 897, 903 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Lone Star and CLS also argue that the jury's answer to special issue number two should be disregarded because it failed to identify or describe the amount of land encroached upon by their building; therefore, it could not form the basis of a judgment fixing a boundary between the parties or form a basis for any damages claimed. We disagree with Lone Star and CLS's contentions. The issue submitted and answered by the jury was a controlling issue and was sufficient to support the court's judgment. *See Bounds v. Caudle,* 611 S.W.2d 685, 687 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Lone Star and CLS's seventh and eighth points of error are overruled.

In points of error nine, ten, eleven, and twelve, Lone Star and CLS contend that the trial court submitted an improper measure of damages to the jury. Specifically, Lone Star and CLS contend that the trial court erred in: 1) failing to submit to the jury their requested special issue in regard to the fair rental value of the land encroached upon by Lone Star and CLS's building; 2) overruling their objection to special issue number three because it had not been raised by the pleadings and was an improper measure of damages; and 3) failing to disregard the jury's answer to special issue number three because it was an improper measure of damages. Since all of these points of error relate to the proper measure of damages we will discuss them together.

Special issue number three submitted to the jury a measure of damages based on the diminution of value of Finlan's leasehold estate due to the encroachment of Lone Star and CLS's building from September 1, 1977 until the time of trial. In considering whether the issue submitted was correct, we note that the measure of damages to be awarded for an injury to real property depends on whether the injury is permanent or temporary in nature. The proper measure of damages if there has been a permanent injury to the real property is the difference between the value of the property immediately before and immediately after the injury. *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978); *Weaver Construction Co. v. Rapier,* 448 S.W.2d 702, 703 (Tex.Civ.App.—Dallas 1969, no writ). If an injury to property is temporary in nature, the proper measure of damages is the reasonable cost of the repairs necessary to restore the property to its condition immediately prior to the injury plus the loss occasioned by being deprived of the

use of the property. *Bradley v. McIntyre*, 373 S.W.2d 389, 391 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.). "Stated differently, the proper measure of damages for a temporary injury to real property is the amount necessary to place the owner of the property in the same position he occupied prior to the injury." *Kraft*, 565 S.W.2d at 227. It has been repeatedly held that loss of rentals is an appropriate measure of damages for the temporary loss of the use of land. *City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex.1978); *Parker v. McGinnes*, 594 S.W.2d 550, 552 (Tex.Civ.App.—Waco 1980, no writ); *City of Abilene v. Walker*, 309 S.W.2d 494, 495 (Tex.Civ.App.—Eastland 1958, no writ); *Harrell v. F.H. Vahlsing, Inc.*, 248 S.W.2d 762, 773 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.)

█ In *Kraft*, 565 S.W.2d at 227, the Texas Supreme Court discussed the factors relevant in characterizing an injury to real property as permanent or temporary:

The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries are those which are constant and continuous not intermittent or recurrent. *Atlas Chemical Industries, Inc. v. Anderson* [524 S.W.2d 681], *supra.* Temporary injuries are those which are not continuous but are "sporadic and contingent upon some irregular force such as rain." Id. Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury. The concepts of temporary and permanent injuries are mutually exclusive and damages for both may not be recovered in the same action. *Lone Star Gas Co. v. Hutton, supra* [58 S.W.2d 19], at 21.

In the instant case, no special issue was submitted to the jury on the question of whether the injury to Reilly and Finlan's property was permanent or temporary. Reilly and Finlan in their pleadings prayed for "judgment for title and *possession* of the above described land." (emphasis ours).

We note that in its judgment the trial court ordered Lone Star and CLS to "vacate said land and give possession and use of said land to Harriet A. Reilly." From the judgment, it appears the trial court considered the injury to be temporary in nature. There is nothing in the record before us to indicate that the parties considered the injury to Finlan's property to be permanent. Accordingly, the trial court should have submitted a damage issue based on the measure of damages applicable to a temporary injury to land. *See Teague*, 570 S.W.2d at 394; *Kraft*, 565 S.W.2d at 227.

█ Special issue number three as submitted by the trial court was an improper measure of damages. The issue required the jury to assess damages for the diminution in value of Finlan's leasehold estate from September 1, 1977 to the time of trial. Special issue number three contains elements of both a temporary and permanent measure of damages. While diminution in value is a measure of damages appropriate for a permanent injury, limiting the recovery to the damages that have occurred up to the time of trial is a characteristic of a temporary injury to property. *Walker*, 309 S.W.2d at 495. As the Supreme Court noted in *Kraft*, the concepts of temporary and permanent injury are mutually exclusive and Finlan was not entitled to recover under both measures of damages.

We decline to hold that the instant case is within the limited exception that the "general rule (of damages for injury to land) should be waived so as to obtain a just and equitable result when the strict adherence to the general rule would result in an outcome which would be unfair or unjust." *B.A. Mortgage Co. v. McCullough*, 590 S.W.2d 955, 957 (Tex.Civ.App.—Fort Worth 1979, no writ). The normal measure of damages for a temporary injury to land would fairly compensate Finlan in the instant case. We sustain Lone Star and CLS's points of error nine, ten, eleven, and twelve.

The sustaining of Lone Star and CLS's points of error nine, ten, eleven, and twelve requires a reversal of the trial court's judg-

ment as to Finlan, but does not require that we render a take nothing judgment, as Lone Star and CLS request in their brief. We believe that the ends of justice would be better served by reversing and remanding for a new trial rather than reversing and rendering judgment that Finlan take nothing in his suit against Lone Star and CLS. *See Mangham v. Hall,* 564 S.W.2d 465, 470–71 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); Tex.R.Civ.P. 434. Accordingly, we affirm the judgment of the trial court with respect to Reilly. We reverse and remand for a new trial as to Finlan.

Affirmed in part and reversed and remanded in part. Costs are taxed one-half against Lone Star and CLS and one-half against Finlan.