

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00357-CV

CHARLES GLEN HYDE, HYDE-WAY, INC., AND
TEXAS AIR CLASSICS, APPELLANTS

V.

ROBERT "BOBBY" HAWK, APPELLEE

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 2012-20229-158, Honorable Tiffany Haertling, Presiding

July 11, 2018

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellants Charles Glen Hyde (Glen Hyde), Hyde-Way, Inc. (Hyde-Way), and Texas Air Classics (Air Classics)[1] appeal a final judgment in a suit brought by appellee Robert "Bobby" Hawk. We will modify the judgment and affirm it as modified.

---

[1] Glen Hyde is the president of Hyde-Way and the principal officer of Air Classics. The term "Hyde" in this opinion will refer to appellants collectively. Another defendant, Texas Air Classics, Inc., was nonsuited by Hawk at trial.

Factual and Procedural Background

In 1995, Glen Hyde conveyed to Wayne Williams an undeveloped lot, Lot 25E, at Northwest Regional Airport in Denton County.[2]  The lot was subject to deed restrictions described in an exhibit to the deed.  In 1998, Williams sold Lot 25E to Hawk; that deed also conveyed the lot subject to deed restrictions described in an exhibit.

Appended to the deed restrictions that accompanied the 1998 deed from Williams to Hawk is a document entitled "Addendum to Deed Restrictions Runway and Taxiway License."  The document is unsigned, but was prepared for execution by Hyde-Way as licensor and Hawk as licensee, and provides a non-exclusive license along common taxiways for access to and from the licensee's hangar, together with the right to use the runway for aircraft landing and departing.  It states its term shall be irrevocable for ninety-nine years provided the licensee makes annual payments and complies with deed restrictions.  The document contains a blank for the amount of the initial annual payment.  An asterisk appears in the blank, and the bottom margin of the page has language, also marked with an asterisk, stating the payment would be determined and would be due on completion of construction of the hangar, at the rate of ten cents per square foot if the hangar was smaller than 5000 square feet and eight cents if it was 5000 square feet or larger.  The language states the license agreement "may be re-recorded after hangar completed and amount of payment inserted."

---

[2]  The airport is privately owned and, according to the testimony of Glen Hyde, is the home of over five hundred based aircraft and is one of the largest privately owned, uncontrolled airports in the United States.

According to Hawk's testimony, Glen Hyde approved Hawk's planned construction of a residential hangar on Lot 25E and told him Hawk would be granted a variance from the deed restriction prohibiting residential hangars. Hawk further testified that Glen Hyde told him Lot 25E had a transferable runway-taxiway license. The fee for the license was due annually and Hawk paid the required sum each year after acquiring Lot 25E.

Other testimony showed that after Hawk completed the residential hangar he leased the apartment residence from 2000 until 2007 to Mr. and Mrs. Kendall, acquaintances of Glen Hyde. When the Kendalls moved into the residence, Hyde loaned them a forklift to move their washer and dryer. After the Kendalls began occupying the hangar residence, Glen Hyde visited them in their leased residence on several occasions.

At about the time Hawk completed the hangar on Lot 25E, he acquired ten lots in Aero Valley Estates, a subdivision adjoining the airport. Lots in the subdivision included the right to use the airport taxiway and runway. Hawk testified he intended to construct homes with hangars as an investment. In 2008, Hawk sold his first lot in Aero Valley Estates. He testified that Glen Hyde was "very upset" because Hawk did not require the purchaser to obtain a taxiway-runway license from Hyde.

From July 2007 until February 2009 Head Rock Industries leased the Lot 25E hanger floor space and apartment residence. It used the residence for office space and occasionally for overnight accommodation. During the tenancy, according to Hawk's testimony, Hyde followed employees on the taxiway, blocked their vehicles, asked to see driver's licenses, and told one person she owed a $250 fine. Because of what Hawk testified was Hyde's harassment, Head Rock Industries vacated the hangar.

3

Hawk was not able to lease the Lot 25E hangar during February and March 2009 despite having a waiting list of prospects seeking to rent airport space. J.D. Daniels, an FAA flight instructor, according to Hawk, "loved" the Lot 25E hangar but upon learning Hyde "had control over that area," chose not to enter a lease.

Gerald Morgan, a retired airline pilot, rented the hangar residence of Lot 25E from March 2009 until January 2012. He parked his airplane at Lot 25E from late May 2011 until August of that year. Morgan testified he did not pay rent to store his airplane "because of the conflict" with Hyde. When asked in testimony why he vacated the Lot 25E space, Morgan responded that he was not able to operate his airplane without "challenges" from Hyde. He described an occasion when, as he prepared his aircraft for takeoff, Hyde called him by radio and demanded immediate payment of a use fee. Morgan returned to the hangar, went to Hyde's office, and paid the requested $400 fee. Hawk reimbursed Morgan this sum. Concerning Morgan's access to the taxiway and runway, Hyde told Morgan he could probably rent hangar space at the airport from another hangar owner. On another occasion, a mechanic working on one of Morgan's cars was stopped by Hyde on the taxiway for allegedly driving too fast. According to Morgan, Hyde demanded the mechanic's driver's license. Morgan testified he felt intimidated by Hyde and but for Hyde's conduct would have continued renting the Lot 25E residential space from Hawk.

The hangar floor space and residence at Lot 25E were vacant from January 2012 until November 2012. Hawk testified he tried weekly to lease the property and received calls daily about available space. When he told the prospects "about the pending situation with" Lot 25E they chose not to become involved.

4

Hawk leased the Lot 25E hangar floor space and residence at what he believed was a reduced rate in December 2012 and that lease remained in place at the time of trial. According to Hawk, the new tenant needed hangar space immediately and said it would "deal with the issues at hand" but would not pay full market value for the property.

Hawk testified that in November 2010, after Hyde had twice blocked Hawk's aircraft, he relocated the storage of his aircraft to another space he owned. Relocation meant Hawk lost a tenant who had paid $800 per month for the space.

Hawk filed suit against Hyde in March 2012 in the 158th District Court of Denton County. His second amended petition, filed in April 2012, sought declaratory and injunctive relief, money damages and attorney's fees. A year later, Hawk filed a traditional motion for partial summary judgment on his claim for a declaration that he held a license or easement for access to the runways and taxiways. After a hearing, the trial court granted the motion and signed an order declaring a license for runway and taxiway use accompanies Lot 25E. Hawk shortly thereafter filed a motion to sever the runway-and-taxiway-license claim from his remaining claims. Hyde opposed the severance. In September, the court signed an order granting the motion to sever, and in October 2013, signed a final judgment which Hyde appealed. We affirmed the judgment of the trial court.[3]

Hawk's remaining claims were transferred to the 442nd District Court of Denton County. Following a jury trial, Hawk recovered judgment awarding him monetary

---

[3] *Hyde v. Hawk,* No. 07-14-00059-CV, 2017 Tex. App. LEXIS 11007 (Tex. App.—Amarillo Nov. 27, 2017, no pet. h.) (mem. op.).

damages, attorney's fees for trial and appeal, and injunctive and declaratory relief. Through eight issues on appeal Hyde challenges the trial court's judgment.

Analysis

Jurisdiction over Air Classics

At trial, Glen Hyde testified regarding the history of Air Classics, a nonprofit corporation, and another corporation, Texas Air Classics, Inc. (TAC, Inc.), a for-profit entity formed in 2013 of which he also is the principal officer. He testified that Hyde-Way sold the airport to Air Classics in 1992. He said Air Classics lost its "501(c)(3)" status after a 2012 audit by the Internal Revenue Service, and "we had to refile and drop the 501(c)(3) status and maintain it simply as a C-Corp, which we did." From the record and from Hyde's briefing, it is clear that Air Classics and TAC, Inc. are separate entities. Glen Hyde testified that TAC, Inc. operates the airport and "owns the runway and taxiway." But he also gave testimony describing the two entities as the "same corporation that's been in place." Asked how TAC, Inc. became the owner of the airport, he testified TAC, Inc. is "basically the Texas Air Classics 501(c)(3), less the non-profit status." He said, "We didn't transfer any assets. We just lost . . . our non-profit status." He agreed, though, that all "rights, liabilities, assets, debts" of Air Classics became those of TAC, Inc. That corporation, he said, "got operation of the airport and ownership of the runway just as a continuation of . . . the non-profit."

When Hawk filed suit in March 2012, he named Glen Hyde, Hyde-Way and Air Classics as defendants. After TAC, Inc. was formed in 2013, it was added as a defendant, but Hawk non-suited his claims against TAC, Inc. during trial.

6

In its first issue on appeal, Hyde argues the judgment against the nonprofit Air Classics is void because the corporation was involuntarily dissolved by the Texas Secretary of State in July 2007. Thus, the argument continues, Hawk's claims against Air Classics are barred by Texas Business Organizations Code section 11.356(a) because they were not brought within three years of the corporation's termination. *See* TEX. BUS. ORGS. CODE ANN. § 11.356(a) (West 2012).

For reasons unclear, Hyde's contention was first raised with the trial court in a response to the motion for judgment Hawk filed after the jury's verdict. The contention was repeated in a motion for new trial Hyde filed after the court signed its final judgment. For reasons also unclear, however, the response and the motion for new trial refer both to the nonprofit Air Classics and the for-profit corporation TAC, Inc., confusing the two entities.[4] Hyde attached to the response a photocopy of a document from the Secretary of State giving notice of the involuntary dissolution of Air Classics on July 11, 2007. Hawk filed a reply to the response objecting to the photocopy as unauthenticated and as contrary to Glen Hyde's trial testimony. Hyde's motion for new trial states that a copy of the "Involuntary Dissolution of Texas Air Classics from the Texas Secretary of State," is attached to the motion, but no such exhibit appears.

The court held a hearing on the motion for new trial, but the confusion of the two parties was not clarified by testimony or argument. Hyde offered into evidence at the hearing what was described as a certified copy from the Secretary of State of the

---

[4] The motion for new trial, for example, contains the statement, "The [t]rial court erred in granting any judgment against Texas Air Classics, Inc. because Texas Air Classics, Inc. was involuntarily dissolved on July 11, 2007."

7

dissolution of "one of the defendants." The document was admitted into evidence but it does not appear in the reporter's record of the hearing. Hyde noted the omission in its appellate brief and appended a copy of the document as an appendix to its brief. The appended document appears to be the same document as was appended to Hyde's response to Hawk's motion for judgment; it documents the involuntary dissolution of Air Classics by the Secretary of State on July 11, 2007. In the brief, Hyde also stated its intention to supplement the appellate record with the document admitted at the hearing. No supplemental record has been filed.

A trial court's denial of a motion for new trial is reviewed for abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). The test for an abuse of discretion is whether the court acted arbitrarily or unreasonably and without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Hawk has appended to his appellate brief an affidavit in which counsel describes receipt of a certificate of fact from the Secretary of State dated May 16, 2017, and swears that a true copy of the certificate is attached to the affidavit. The certificate attached contains a more complete history of the corporate existence of Air Classics than is reflected by the July 2007 document Hyde has submitted to us. The May 2017 certificate states that Air Classics, a domestic nonprofit corporation, was involuntarily dissolved on July 11, 2007 for failure to file a required report, but that the Secretary of State reinstated its certificate of incorporation on July 14, 2008, when the report was filed. The certificate further states that the corporation was voluntarily terminated on May 1, 2013, by the filing of a certificate of termination.

8

Documents attached to appellate briefs generally are not part of the appellate record and cannot be considered by the court. *Worldpeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see In re Guardianship of Herron*, No. 02-13-00317-CV, 2014 Tex. App. LEXIS 10203, at *10 n.7 (Tex. App.—Fort Worth Sep. 11, 2014, no pet.) (citing *Worldpeace*); TEX. R. APP. P. 34.1 (appellate record consists of clerk's record and, if necessary to appeal, reporter's record). We do not doubt that the copy of the Secretary of State's July 2007 document appended to Hyde's brief is an accurate copy of the document admitted into evidence at the hearing, but the fact remains that the document is before us only by virtue of Hyde's attachment of it to the brief.

For two reasons, we overrule Hyde's first issue. First, the trial court was not required to sort out the confusing references to the two corporate entities in Hyde's motion for new trial. In places the motion makes reference to Air Classics but elsewhere it refers to TAC, Inc. For that reason alone, we would conclude the court did not abuse its discretion by denying the motion for new trial.

Second, without consideration of the document appended to Hyde's brief, the appellate record does not show Air Classics' corporate existence was terminated, and not reinstated,[5] more than three years before the filing of Hawk's suit in 2012. *See In re Bros. Oil & Equip., Inc.,* No. 03-17-00349-CV, 2017 Tex. App. LEXIS 7969, at *13 n.6 (Tex. App.—Austin Aug. 22, 2017, no pet.) (mem. op.) (op. on reh'g) (observing that under

---

[5] *See* TEX. BUS. ORGS. CODE ANN. § 11.001(4) (West Supp. 2017) (defining "terminated entity" as one terminated as authorized or required by the code, "unless the entity has been reinstated . . . ."); *id.* § 11.253 (West 2012) (describing procedure and result of reinstatement after involuntary termination).

Texas Business Organizations Code section 11.356(a)(1) an entity that has forfeited its charter continues in existence for three years from the effective date of its termination for purposes that include defending an action brought against it). For that reason also, Hyde has not demonstrated the trial court abused its discretion by denying the motion for new trial with respect to the judgment against Air Classics.

Moreover, we could not, without injustice, consider the July 2007 document appended to Hyde's brief without also considering the affidavit and more complete May 2017 certificate appended to Hawk's brief. That certificate affirmatively demonstrates that Air Classics' corporate existence was reinstated a year after the involuntary dissolution.

Hyde's first issue complaining of the judgment against Air Classics on the ground Hawk's claim against that corporation is barred by Texas Business Organizations Code section 11.356(a) is overruled.

Sufficiency of the Evidence

Hyde challenges the legal and factual sufficiency of the evidence supporting the amount of damages awarded (second issue); causation (third issue); and the liability of Air Classics for failure to issue a deed-restriction variance (sixth issue).

Based on jury findings the judgment contains multiple compensatory damage awards in favor of Hawk and against some or all of appellants. First, it awarded $158,950 against Glen Hyde, Hyde-Way, and Air Classics for their interference with Hawk's or one of his tenant's use of the taxiway-runway easement. Second, it awarded $158,950 against Glen Hyde, Hyde-Way, and Air Classics for their intentional interference with Hawk's or one of his tenant's use of the taxiway-runway license. Third, it awarded

10

$158,950 against Hyde-Way for its failure to comply with the taxiway-runway license. Fourth, it awarded $107,350 against Hyde-Way and Air Classics for those entities' failure to comply with an agreement to provide a permanent variance for Hawk from Lot 25E's no-residence deed restriction. Finally, the court capped Hawk's recovery of compensatory damages at $158,950.

A party challenging the legal sufficiency of evidence supporting an adverse finding on which it did not bear the burden of proof must show no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 215 (Tex. 2011). A legal sufficiency or "no evidence" challenge will be sustained if the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). In determining the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller,* 168 S.W.3d at 809.

When considering a factual sufficiency challenge of a finding on which the appellant did not bear the burden of proof, we first examine all of the evidence*, Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986), and, having considered and weighed all of the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar,* 395

S.W.2d 821, 823 (Tex. 1965). The trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony. *Foley v. Parlier,* 68 S.W.3d 870, 879 (Tex. App.—Fort Worth 2002, no pet.).

*Issue 2: Amount of Damages*

As noted, Hawk recovered compensatory damages totaling $158,950 under three theories of liability. By the jury's explicit findings, this figure consists of $107,350 for lost past rental income, $51,200 for the cost of aircraft storage, and $400 for Hawk's reimbursement of tenant runway fees. Under a fourth theory of liability, the jury awarded $107,350 for lost past rental income as the only damages. Hyde does not challenge on appeal the sufficiency of the evidence supporting the $51,200 aircraft storage fees or the $400 fee reimbursement the jury awarded. Our analysis will consider only the sufficiency of the evidence supporting the $107,350 award for Hawk's lost past rental income.

The loss of rentals is a proper measure of damages for the temporary loss of use of land. *City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex. 1978). "[A] characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury." *Lone Star Dev. Corp. v. Reilly,* 656 S.W.2d 521, 526 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (quoting *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex. 1978)). "Rental value is that amount which, in the ordinary course of business, the premises would bring or for which they could be rented, or the value, as ascertained by proof of what the premises would rent for, and not the probable profit which might accrue." *Teague,* 570 S.W.2d at 394 (citation and internal quotation marks omitted). Like lost profits, the rental value of real property must be shown

12

with reasonable certainty. *Id.* (citing *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938)). The reasonable rental value of property may be established by opinion testimony. *Bradley v. McIntyre,* 373 S.W.2d 389, 390 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.).

From 2000 to July 2007, Hawk leased the Lot 25E hangar residence to the Kendalls for $1,800 per month. From July 2007 to February 2009, the entire hangar was leased to Head Rock Industries for $2,850 per month. This amount was apportioned between rent of hangar floor space at $1,350 per month and rent of the residence at $1,500 per month.

The hangar floor space and residence were vacant during February and March 2009. The hangar floor space remained vacant from April 2009 through December 2011, while Morgan leased the residence for $1,600 per month. Both the hangar floor space and residence were vacant from January 2012 to November 2012. From December 2012 to February 2016, Hawk rented the hangar floor space and residence to TexPro Construction Group, LLC. For December 2012 the rent was $1,250, and from January 2012 to February 2016 the rent was $2,500 per month.

In testimony Hawk agreed that he buys, sells, and develops real estate. He testified he owns seventeen or eighteen airport hangars and that he leases all but one. While trying to rent the Lot 25E hangar, he received regular calls for airport space and had a waiting list for an opening. According to Hawk, after Head Rock Industries vacated Lot 25E he believed he could have continued renting the building for $2,850 but for Hyde's conduct. During Morgan's tenancy of the residence Hawk did not rent hangar floor space

13

because of Hyde's runway-taxiway interference.  Hawk testified to his opinion that, but for Hyde's interference, he could have leased the floor space because of the number of calls he received and a waiting list for his properties.  In his further opinion, for the thirty-three-month period from March 2009 to January 2012, the hangar floor space would have generated "at least" $1,600 per month in rental income.  When Morgan vacated the property, because of Hyde's conduct according to Hawk, the hangar was vacant from January 2012 until November 2012.  Based on Hawk's experience leasing properties at the airport he testified for that period he sought, and believed reasonable, a $3,000 monthly rental charge for the hangar floor space and residence together.  When the hangar floor space and residence were finally leased in December 2012 by TexPro, its current tenant, the rent was about $500 a month less than Hawk sought, and the property was leased with the stipulation that if TexPro was prevented from using the taxiway and runway it could terminate the lease at any time without penalty.

In testimony, Glen Hyde agreed that he "runs" Hyde-Way and is its president.  According to Glen Hyde, Hyde-Way is a development company in the business of developing hangars at the airport.  Glen Hyde testified that he is a licensed realtor and agreed that he operates a business known as Airport Realty.  Glen Hyde also testified that he owns the hangar next to Lot 25E and rents it for approximately $3,333 per month.

The charge asked the jury to find whether Hyde "interfere[d]" with Hawk's or one of his tenants' use of the runway or taxiway easement and if so to state the amount of past rental income Hyde lost on Lot 25E.  It responded with the amount $107,350.  The jury answered with the same amount of lost past rental income when asked of Hyde-Way's failure to comply with the taxiway-runway license; Glen Hyde's, Hyde-Way's, and

14

Air Classics' intentional interference with the taxiway-runway easement; and Hyde-Way's and Air Classics' failure to provide a no-residence deed-restriction variance. The amount of lost, past rental income found by the jury and awarded in the judgment was supported by more than a scintilla of competent evidence and was not so against the great weight and preponderance of the evidence to be clearly wrong and unjust. Under the testimony we have recited, we find a reasonable and fair-minded jury could have believed Hawk lost past rental income of $107,350. *See Austin*, 570 S.W.2d at 394 (standard for loss of rentals). Hyde's second issue is overruled.

*Issue 3: Causation of Damages*

The court's four compensatory damage questions each contained a "resulted from" causation standard. Hyde argues the evidence was legally or factually insufficient to establish that the amount of lost past rental income found by the jury resulted from an act or omission of appellants.

It is unnecessary here to reiterate the previously noted proof that tenants vacated Lot 25E because of Hyde's conduct and prospective tenants, on learning of the ongoing Hawk-Hyde dispute, chose not to rent some or all the property or, as in the instances of TexPro and Morgan, negotiated less-than-market-price leases.

We find the evidence allowed a reasonable and fair-minded juror to find Hawk's lost past rental income of $107,350 resulted from Hyde's conduct and was therefore legally sufficient. *City of Keller,* 168 S.W.3d at 827. The evidence was likewise factually sufficient because when viewed in a neutral light it is not so against the great weight and

15

preponderance of the evidence as to be clearly wrong and unjust. *Cain,* 709 S.W.2d 176. We overrule Hyde's third issue.

*Issue 8: Conduct of Air Classics supporting Non-Residential Declaration*

Hawk sought a declaration that the deed restriction reading, "l4. Airplane hangars are non-residential; i.e., residential uses are expressly prohibited" in Lot 25E's warranty deed from Williams to Hawk, was unenforceable under the equitable principles of promissory estoppel; equitable estoppel; abandonment; and waiver. The jury made findings favorable to Hawk on each equitable ground and the trial court rendered judgment against Hyde-Way and Air Classics declaring the deed restriction permanently unenforceable. The court also awarded Hawk attorney's fees against Glen Hyde, Hyde-Way, and Air Classics under Civil Practice and Remedies Code section 37.009 in the amount of $16,608. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015).

Civil Practice and Remedies Code section 37.009 "affords the trial court a measure of discretion in deciding whether to award attorney fees or not." *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex. 1998). We therefore review its decision to award attorney's fees for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex. 2004) (citing *Bocquet,* 972 S.W.2d at 21). As noted, a court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules and principles. *Downer,* 701 S.W.2d at 241-42. Four express limitations constrain a court's discretion in awarding attorney's fees under section 37.009. *Bocquet,* 972 S.W.2d at 21. Any amount of attorney's fees awarded must be reasonable, necessary, equitable, and just. *Id.* The

16

reasonableness and necessity of an award are questions of fact while the equity and justness requirements are matters for the court's discretion. *Id.*

In appellants' eighth issue, Air Classics argues it bore no responsibility to issue a variance from the non-residential deed restriction[6] and there is therefore no evidence to support a discretionary award of attorney's fees against it under section 37.009. But the jury made findings unchallenged on appeal against Air Classics on theories of promissory estoppel; equitable estoppel; abandonment; and waiver. The trial court, in turn, rested its declaratory judgment for Hawk on these predicate jury findings. In light of jury findings that conduct of Air Classics supported the declaratory judgment, we are unable to agree the court abused its discretion by assessing attorney's fees against that entity.

The parties agree that declaratory relief was neither requested nor awarded against Glen Hyde, individually, and the $16,608 attorney's fees award should not have been taxed against him in that capacity. We agree and will modify the judgment accordingly. Otherwise issue eight is overruled.

*Issue 6: No Evidence of Air Classics' failure to issue a Letter of Variance*

Air Classics argues the evidence was insufficient to support a jury finding that it breached an agreement to provide Hawk a letter of variance from the no-residence deed restriction and for that reason attorney's fees under Civil Practice and Remedies Code section 38.001(8) could not be awarded against it. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015).

---

[6] Under the terms of the deed restrictions appended to Hawk's deed from Williams, variances from the restrictions are allowed, with Hyde-Way's written consent.

The jury found Hyde-Way and Air Classics agreed to provide Hawk a letter of variance and each failed to comply with their agreement. It found as a result Hawk sustained lost past rental income of $107,350 and a reasonable attorney's fee for representing Hawk on the letter-of-variance issue was $16,608. The judgment awarded Hawk attorney's fees of $16,608 based on breach of contract, section 38.001(8), and as noted in our discussion of issue eight, under Hawk's claim for declaratory relief. As also noted the judgment provided Hawk may recover no more than $158,950 on his compensatory damage claims. The judgment also limited the amount of attorney's fees on a letter-of-variance claim to no more than $16,608. We have already found the evidence sufficient to support the maximum compensatory damage amount of $158,950 as to all defendants and that the trial court acted within its discretion to award Hawk attorney's fees against Air Classics for the no-residence variance under section 37.009. Accordingly, we dismiss issue six as moot.

Propriety of Severance

Through its fourth issue, Hyde argues that the 158th District Court erred by severing the declaratory judgment, which found Hawk possessed a runway-taxiway license or easement, from Hawk's claim for resulting attorney's fees. Hyde has already appealed the propriety of the 158th District Court's severance order and on that issue we have rendered an opinion. *See* 2017 Tex. App. LEXIS 11007, at *7-10. Hyde adds a subsidiary argument that the claimed error of the 158th District Court prevented the judgment here on appeal from becoming final. We find the claim without merit. Because the 442nd District Court's judgment now on appeal followed a conventional trial on the merits, we presume its finality. *See Vaughn v. Drennon,* 324 S.W.3d 560, 561 (Tex. 2010)

18

(per curiam) (applying finality presumption). Further, the judgment states it "final[ly] disposes of all claims and all parties, and is appealable. All relief requested in this lawsuit, which that (sic) Final Judgment and Permanent injunction does not grant, is DENIED." We do not find, nor are we directed to, any location in the record that shows otherwise. Hyde's fourth issue is overruled.

Amount of Attorney's Fees Awarded Hawk

By his fifth issue, Hyde challenges the amount of attorney's fees awarded Hawk. Between the proof presented by his former counsel and that by his trial counsel, Hawk's evidence of attorney's fees in the trial court totaled $196,081.25. Specifically, former counsel's fee evidence totaled $121,081.25 while trial counsel valued his firm's work at $75,000. The jury awarded Hawk attorney's fees of $132,865 for representation on the runway-taxiway issues and $16,608 for work attributable to Hyde's failure to provide a letter of variance from the no-residence deed restriction.

Hyde argues the total fee award of $149,473 must be reduced by $60,000 because trial counsel charged Hawk a flat fee of $15,000, rather than the $75,000 counsel testified was the reasonable and necessary fee. The nub of Hyde's argument seems therefore to be that Hawk can recover no more than $15,000 for trial counsel's work because this was the maximum fee he incurred.

On cross-examination, Hawk's trial counsel acknowledged he was asking the jury to award a greater amount of attorney's fees than what Hawk might be obligated to pay. The jury was not instructed to limit an award of fees attributable to Hawk's trial counsel and Hyde did not object to the court's charge nor did he challenge the amount of

19

attorney's fees awarded by post-trial motion. Hawk contends the assertion his trial counsel's fee award must be limited to $15,000 was not preserved for review, and we agree. TEX. R. APP. P. 33.1(a). For that reason, issue five is overruled.

Sufficiency of Injunction

The judgment permanently enjoined Hyde from "interfering with the existence or use, by [Hawk], his tenants, or their guests, or his successors, their tenants, or their guests of" Lot 25E's taxiway-runway license or easement for access and use.

Hyde's seventh issue challenges the injunction. Hyde divides its complaint on appeal into two sub-issues: (1) there was no evidence to indicate the probability of future taxiway-runway interference by Hyde; and (2) the injunction is overly broad because it does not define the term "interference," thus Hawk might claim that necessary taxiway-runway maintenance and improvements are acts of interference.

Hawk argues Hyde's appellate complaints concerning the injunction were not raised in the trial court and therefore are not preserved for review. In its motion for new trial, Hyde challenged the propriety of the injunction by arguing: (1) the trial court improperly submitted the interference inquiry to the jury such that it was not possible to determine whether Hawk or his tenants experienced acts of interference; (2) necessary questions preliminary to granting an injunction were not submitted to the jury; and (3) because Hawk's request for a permanent injunction was not submitted to the 158th District Court before the severance it was barred by the doctrine of res judicata.

We agree with Hawk that Hyde's present complaints as to the injunction are not preserved for our review. To preserve error for appellate review a party's objection in the

trial court must comport with its argument on appeal. *Hulcher Servs. v. Emmert Indus. Corp.,* No. 02-14-00110-CV, 2016 Tex. App. LEXIS 928, at \*63 n.49 (Tex. App.—Fort Worth Jan. 28, 2016, pet. denied) (mem. op.).[7]  Hyde's seventh issue is overruled.

## Conclusion

We modify the trial court's judgment by deleting the name "Charles Glen Hyde" from paragraph 4.b., page 5 of the judgment.  Having overruled or dismissed each of Hyde's issues, we affirm the judgment of the trial court as modified.  *See* TEX. R. APP. P. 43.2(b).

James T. Campbell
Justice

---

[7]  Moreover, as to Hyde's concern over the injunction's purported overbreadth, the trial court retains original jurisdiction to review, open, vacate, or modify its decree of permanent injunction on a showing of changed circumstances. *Smith v. O'Neill,* 813 S.W.2d 501, 502 (Tex. 1991) (orig. proceeding) (per curiam).